HIGGINS, Justice.
 

 The plaintiff, claiming to be the bona fide holder and owner for value in due course, before maturity, of a certain promissory note in the sum of $2,000, purportedly executed by the defendant on December 17, 1929, payable twelve months after date and secured by a conventional mortgage on his homestead, instituted this suit against the defendant for the face value thereof, with 8% interest per annum from December 17, 1930, until paid and 10% additional attorney’s fees, and for recognition of the mortgage. The plaintiff further alleged that the mortgage note was given to secure a pre-existing indebtedness due by the defendant to H. E. Harvey, which debt was represented by defendant’s note dated January 6, 1930, for the sum of $1,980, due on May 16, 1930; that the mortgage note was pledged to secure the payment of this note; and that the plaintiff acquired the principal note and the collateral mortgage note (both notes being annexed to and made a part of the petition) from H. E. Harvey.
 

 The defendant, in his answer, denied that he was indebted in any amount whatsoever and that the plaintiff was the owner of either of the notes. He admitted his signature to the $2,000 collateral mortgage note but denied that he had ever endorsed or negotiated it, averring that it had been stolen from him and that his signature to the principal note and his endorsement of the collateral mortgage note were forgeries.
 

 The suit was filed on December 16, 1935. The trial was begun on March 27, 1940, and completed on January 17, 1941, resulting in a judgment rendered on June 27, 1941, in favor of the defendant, rejecting the plaintiff’s demand, at his costs. The plaintiff’s, motion for a new trial or rehearing on the grounds of newly discovered evidence was. overruled on November 14, 1941. Formal
 
 *121
 
 judgment was signed on December 12, 1941, and the plaintiff appealed.
 

 The record shows that the defendant and H. E. Harvey, plaintiff’s brother-in-law, were partners in business for a number of years and later severed their relations. The plaintiff alleges and testified that he purchased the notes in question from his brother-in-law during the year 1934 on an installment basis. He admits that he never made any demand upon the defendant for the payment of the note, except to file the present suit. The plaintiff alleged and Mr. Harvey stated that he (Harvey) accepted the note in question from the defendant as evidence of the defendant’s indebtedness to him that had existed for several years. Mr. Harvey states that the defendan*- signed the principal note but that Mr. O. E. Corbett, the deceased cashier of the Jonesboro Bank, endorsed the mortgage note for Mr. Jones in his presence and that it was pledged as collateral security for the principal note. The plaintiff sought to corroborate Mr. Harvey’s testimony by that of a woman who had been employed by Mr. Harvey and who had also done some work in the office for Harvey & Jones, the partnership. She states that she heard Mr. Jones admit owing Mr. Harvey money and that he spoke about a note which he handed to Harvey. The president of the Bank testified that Mr. Jones owed his institution certain money and secured it by a $3,000 mortgage note, but upon learning that the $2,000 mortgage note was one of the two notes of the series secured by the same mortgage on the defendant’s homestead, he requested him to deliver the $2,000 note to the bank but that the defendant had never done so. He admits that Mr. Jones liquidated, in full, the note due to the bank and that the paid note and the $3,000 collateral mortgage note were returned to him.
 

 The defendant testified that his signatures to the principal note and the endorsement of the mortgage note were forged but admitted that he signed the mortgage note. He states that he never at any time negotiated the $2,000 mortgage note and that it had been stolen from him. His testimony is corroborated by the plaintiff’s evidence that the building on the mortgaged land burned in November, 1932, and the fire insurance adjuster made the check payable to the defendant and the bank as creditor under the loss payable clause in the policy. Before the adjuster delivered the check in payment of the fire loss under the policy, the defendant testified that he required him to exhibit the $2,000 mortgage note to show that it was not outstanding so that in making the payment the insurance company would not become involved in any claim by another creditor. The payment was made on January 6, 1933.
 

 The defendant’s testimony is corroborated by his two sons and three disinterested witnesses who were' familiar with his signature.
 

 The two handwriting experts who testified for the plaintiff and the defendant, respectively, contradicted each other, one stating that the signature to the principal note and the endorsement of the mortgage note are in the defendant’s handwriting and the other stating that the signatures are obvious forgeries.
 

 
 *123
 
 The testimony of the witnesses and the experts is in conflict and hopelessly irreconcilable. The principal note is dated December 17, 1930, yet Mr. Harvey, in his testimony, stated that the collateral mortgage note of $2,000 was obtained by him in 1933 or 1934, whereas the principal note itself shows that the mortgage note at the time of the execution of the principal note was attached as collateral. While the plaintiff alleged that he was the bona fide owner of the note before maturity, it appears that the principal note was due On May 16, 1930, and the mortgage note on December 17, 1930, and both notes were acquired by the plaintiff in 1934 or long after their maturity. It is also to be noted that the plaintiff did not make any demand upon the defendant for the payment of the note until the present suit was instituted. It is also most unusual, to say the least, that defendant, although he was supposed to sign the principal note, would then direct Mr. Corbett to endorse the mortgage note in pencil rather than sign it himself, he being an experienced business man.
 

 From a careful reading of the record and considering the magnified or enlarged alleged signatures and comparing them with the genuine signatures of the defendant, it is our opinion that the trial judge correctly 'found that the preponderance of the evidence showed that the signatures to the two notes were forgeries.
 

 The plaintiff’s plea of estoppel is based upon the theory that the defendant is said to have stated that he owed' Mr. Harvey money and even if he did not authorize Mr. Corbett to sign his name on the back of the mortgage note, the defendant was present when he did so and, therefore, he is estopped to repudiate the endorsement on the mortgage note. (The deceased Mr. Corbett, of course, was unavailable as a witness.) The same observation with reference to the main issue of forgery is equally applicable here—that the evidence is conflicting but preponderates in favor of the defendant that he did not make any statement that he owed Mr. Harvey any money or was present when Mr. Corbett is said to have signed the defendant’s signature to the back of the mortgage note.
 

 The motion for a new trial or rehearing on the grounds of newly discovered evidence is opposed by the defendant on two grounds: (1) That the motion fails to set out facts supporting the pleader’s legal conclusion that by the exercise of due diligence he could not have obtained the newly discovered evidence at the time of the trial; and (2) that the alleged newly discovered evidence relates to facts which were not pleaded.
 

 Mr. Harvey, brother-in-law of the plaintiff, testified in the trial. The affidavit attached to the motion for a new trial was signed by two parties who formerly worked for Mr. Harvey and, therefore, Mr. Harvey knew or should have known those two alleged witnesses were familiar with the purported transaction. As he was assisting his brother-in-law in presenting the case over a long period of time, it certainly cannot be said that this alleged newly discovered evidence could not have been obtained by the exercise of due diligence. The dis
 
 *125
 
 trict judge properly exercised his discretion in refusing to grant the plaintiff a rehearing or a new trial.
 

 For the reasons assigned, the judgment is affirmed, the appellant to pay all costs of court.